# Exhibit B

 **(cfpb.gov/)**

# Cracking down on discrimination in the financial sector

By Eric Halperin and Lorelei Salas – MAR 16, 2022

Discrimination has a long and ugly history in our nation—and blatant acts of discrimination continue to occur every day. New manifestations of discrimination, embedded within systems and technologies, harm communities even where such acts are not visible. The COVID-19 pandemic brought into sharper focus the inequities that continue to plague the country, and the Consumer Financial Protection Bureau will fight to end discrimination in the financial sector.

We enforce a number of laws that can target discriminatory practices, including the Consumer Financial Protection Act (CFPA). The CFPA empowers us to identify, prohibit, and prosecute unfair, deceptive, and abusive acts or practices committed by any covered person or service provider in connection with any transaction for, or offer of, a consumer financial product or service. The CFPA defines an act or practice as unfair when 1) it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable, and 2) such substantial injury is not outweighed by countervailing benefits to consumers or competition.

When people of color suffer racist conduct in the financial marketplace, it can cause substantial monetary and non-monetary harms. Depending on how the conduct occurs (face-to-face, digital, systematic, etc.), many individuals may be unaware they received disparate treatment or a discriminatory outcome. Even when they are aware, there can be a feeling of unavoidability or powerlessness to stop the discrimination.

However, such practices fall squarely within our mandate to address and eliminate unfair practices. For example, Director Chopra has spoken (https://www.consumerfinance.gov/about-us/newsroom/remarks-of-director-rohit-chopra-at-a-joint-doj-cfpb-and-occ-press-conference-on-the-trustmark-national-bank-enforcement-action/) about the work the CFPB will undertake to focus on the widespread and growing reliance on machine learning models throughout the financial industry and their potential for perpetuating biased outcomes.

Additionally, certain targeted advertising and marketing, based on machine learning models, can harm consumers and undermine competition. Consumer

advocates, investigative journalists, and scholars have shown how data harvesting and consumer surveillance fuel complex algorithms that can target highly specific demographics of consumers to exploit perceived vulnerabilities and strengthen structural inequities. We will be closely examining companies' reliance on automated decision-making models and any potential discriminatory outcomes.

As part of our broad efforts to identify and address unfair acts and practices, we recently announced changes to the manual we use to guide our supervision of covered financial institutions. Under the updated examination guidelines, we will continue to scrutinize any conduct of covered institutions that violates the federal prohibition against unfair practices, including determining if an entity has unfairly discriminated against certain people.

The updated manual guides examiners in looking beyond discrimination directly connected to fair lending laws, asking them to review any policies or practices that exclude individuals from products and services, or offer products or services with different terms, in an unfairly discriminatory manner. For example, not allowing people of color to open deposit accounts may be an unfair practice even in those instances when the Equal Credit Opportunity Act (ECOA) does not apply to this type of transaction.

However, vigorous enforcement of the ECOA continues to be essential for us to achieve broader equity and opportunity. Under Director Chopra, we will prioritize enforcement of the ECOA to ensure that no one suffers discrimination with respect to any aspect of a credit transaction. In the area of housing for example, we have gone after [companies for alleged redlining practices](https://www.consumerfinance.gov/about-us/newsroom/remarks-of-director-rohit-chopra-at-a-joint-doj-cfpb-and-occ-press-conference-on-the-trustmark-national-bank-enforcement-action/), and outlined options to prevent [algorithmic bias](https://www.consumerfinance.gov/about-us/newsroom/cfpb-outlines-options-to-prevent-algorithmic-bias-in-home-valuations/) in home valuations.

We know enforcement actions and supervisory examinations are not enough to create a fair and competitive market free from discrimination. Other steps we can take are efforts that build community wealth in historically underserved areas through supporting small businesses.

Through the beginning of 2022, we collected public comments on a proposed rule, under section 1071 of the CFPA, that would require lenders to collect and report certain data with respect to small business loan applicants and applications. This rule would help provide valuable information to the CFPB, other government agencies, lenders, and the public to identify areas of business and community development needs, and to facilitate enforcement of fair lending laws. We will be reviewing the comments that are provided to

inform a final rule that will fulfill the important small business and community development purposes of section 1071.

There is no one solution to ending both individual and systemic discrimination, so we will continue to use every tool at our disposal to ensure markets are free from discrimination and that every person can participate in financial markets on fair, competitive, and equal terms.

## FURTHER READING

### 💬 Blog

**It's illegal to penalize borrowers for being religious** (cfpb.gov/about-us/blog/its-illegal-penalize-borrowers-being-religious/)

JAN 14, 2022

**Ang kahalagahan ng patas at pantay na pag-access sa kredito para sa mga minorya at negosyo na pag-aari ng kababaihan** (cfpb.gov/about-us/blog/credit-access-minority-women-owned-businesses-tl/)

MAY 22, 2020

**The importance of fair and equitable access to credit for minority and women-owned businesses** (cfpb.gov/about-us/blog/fair-equitable-access-credit-minority-women-owned-businesses/)

APR 27, 2020

### 📰 Newsroom

**CFPB, DOJ Order Trident Mortgage Company to Pay More Than $22 Million for Deliberate Discrimination Against Minority Families** (cfpb.gov/about-us/newsroom/cfpb-doj-order-trident-mortgage-company-to-pay-more-than-22-million-for-deliberate-discrimination-against-minority-families/)

JUL 27, 2022

**Director Chopra's Prepared Remarks at a Joint DOJ, CFPB Press Event on the Trident Enforcement Action** (cfpb.gov/about-us/newsroom/director-chopras-prepared-remarks-at-a-joint-dof-cfpb-press-event-on-the-trident-enforcement-action/)

JUL 27, 2022

**CFPB Affirms Ability for States to Police Credit Reporting Markets** (cfpb.gov/about-us/newsroom/cfpb-affirms-ability-for-states-to-police-credit-reporting-markets/)

JUN 28, 2022

📅 Events

**Building a bridge to credit visibility** (cfpb.gov/about-us/events/archive-past-events/building-bridge-credit-visibility/)

SEP 17, 2018

**View more** (cfpb.gov/activity-log/?topics=discrimination&topics=fair-lending)

---

🇺🇸  An official website of the United States government