# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; INDEPENDENT BANKERS ASSOCIATION OF TEXAS; TEXAS ASSOCIATION OF BUSINESS; and TEXAS BANKERS ASSOCIATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br><br>*Defendants*. | Case No. 6:22-cv-00381<br><br>**DECLARATION OF GLENN HAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**DECLARATION OF GLENN HAMER**

I, Glenn Hamer, declare as follows:

1. I am the President and CEO of the Texas Association of Business (TAB). TAB is a general business association and state chamber of commerce. TAB represents member companies, large and small, to advocate for a policy, legal, and regulatory environment that allows them to thrive in business.

2. The purpose of this declaration is to discuss the effects of a new rule announced by the CFPB in an amendment to its Supervision and Examination Manual, Unfair, Deceptive, or Abusive Acts or Practices Section, issued by the Consumer Financial Protection Bureau on March 16, 2022 ("Manual Update").

3. Unless otherwise stated, this Declaration is based upon my personal knowledge and belief. If called as a witness, I could and would testify competently thereto.

**I.     TAB'S Mission and Members**

4.      TAB, the state chamber, was established in 1922 by three San Antonio businessmen: G.M. Kneibel, G.G. Geyer, and I.M. McIlhenny. Since then, TAB has worked alongside businesses and its chamber partners to represent companies of all sizes and sectors, advocating for pro-business policies.

5.      TAB works in a bipartisan manner to vigorously protect Texas' pro-business climate, delivering solutions to the challenges affecting Texas employers and fighting against excessive, burdensome, or unnecessary regulations.

6.      TAB's purpose is to champion the best business climate in the world, unleashing the power of free enterprise to enhance lives for generations.

7.      TAB has depository institutions as members that are subject to CFPB supervision and examination, *see* 12 U.S.C. §5515, and listed as such on the CFPB's website at: https://files.consumerfinance.gov/f/documents/cfpb_depository-institutions-list_2022-03.pdf.

8.      TAB also has members not currently subject to CFPB supervision but subject to the prohibition on unfair, deceptive, abusive, acts, or practices ("UDAAP") in the Dodd-Frank Act, which applies to "covered person[s]" and "service provider[s]. 12 U.S.C. §5531(a). "[C]overed person" is defined to include "(A) any person that engages in offering or providing a consumer financial product or service" and "any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person." §5481(6).  We have members who offer and provide consumer financial products and services but are not on the CFPB list for supervision and examination described above.

## II. The Impact of the CFPB's UDAAP Rule on Business

### A. The CFPB's new UDAAP rule causes members to incur burdensome compliance costs.

9. To ensure compliance with Dodd-Frank's requirements and proscriptions, the CFPB subjects regulated entities to compliance examinations. CFPB personnel go onsite to regulated entities to observe, conduct interviews, and review documents and information. They review both whether there is evidence of violations and whether there are adequate policies and procedures in place to prevent violations. These examinations require substantial time and attention by the employees of regulated entities, time and attention that must be diverted from other business activities. Compliance with Dodd-Frank's prohibition on UDAAP is one matter that the CFPB investigates through its examination process.

10. The CFPB gives its examiners direction on how to assess compliance with federal consumer financial laws in these examinations through its Supervision and Examination Manual. This manual provides regulated entities with information about how the CFPB assesses their compliance with federal consumer financial laws and sets forth expectations for every institution under the CFPB's supervision and enforcement authority.

11. A change to the scope of UDAAP imposes direct costs on regulated entities. Entities must undergo examinations and comply with the CFPB's demands for records, information, and other materials. The CFPB's expanded interpretation of UDAAP leads to an expansion of the materials that will be relevant to the CFPB's examination and thus imposes additional examination costs on regulated entities as they respond to these expanded examinations.

12. Another cost from the expansion of UDAAP is the cost of ensuring that the regulated entity has sufficient compliance policies and procedures to satisfy the CFPB. Regulated entities will have to expend resources to introduce and maintain new compliance programs to account for the CFPB's expanded interpretation of UDAAP.

13. The Manual Update also offers no guidance on what protected classes or characteristics the CFPB seeks to protect, leaving regulated entities to guess as to what potential disparate impacts the CFPB may deem unfair under UDAAP. This lack of clarity further increases compliance costs for covered entities subject to CFPB supervision.

14. The increased compliance costs are not limited to those whom the CFPB supervises. Because the CFPB is the agency charged by Congress with interpreting the UDAAP provision of the Dodd-Frank Act, 12 U.S.C. §5536(a)(1)(B), any entity subject to the Dodd-Frank provisions governing UDAAP is affected by the CFPB's pronouncements.

### B. The CFPB's UDAAP rule threatens depository institutions with costly enforcement actions.

15. In addition to harming depository institutions by forcing them to incur compliance costs with the unlawful update, CFPB also harms them by exposing them to the risk of enforcement actions for violations of the UDAAP expansion.

16. The CFPB can choose to bring an enforcement action based on findings it made during the examination process. In that enforcement action, the CFPB can issue penalties, including a variety of monetary penalties.

17. The prospect of defending an expensive enforcement action, with the potential for monetary penalties, will lead members to change their behavior to avoid liability. Members that choose not to accede to CFPB's expansion of UDAAP will have to incur those costs and risk those penalties.

### C. The CFPB's UDAAP rule threatens innovation and diversity of offerings in the consumer financial-services industry.

18. The prospect of potential disparate-impact liability also threatens to force depository institutions to eliminate or forgo innovative consumer financial-services products, which our universal member base benefits from. Under the vague standards announced in the Manual Update, it is

impossible to know whether the CFPB would view it as unfair to offer a particular deposit product to consumers with more well-established relationships with a bank because such consumers would tend to be older than those opening their first bank accounts. Similarly, the prospect of disparate-impact liability looms large even over attempts made to increase access to consumer financial products for underserved communities.

### III. Enjoining CFPB's UDAAP Expansion Would Remedy Harms to Depository Institutions

19. Enjoining the CFPB's use of the Manual Update would remedy the harms to depository institutions from the Manual Update. Depository institutions could safely forgo the additional compliance costs that the Manual Update would otherwise impose and would save the resources they would otherwise expend on compliance. They would also be saved from the additional cost of complying with examinations on the expanded interpretation of UDAAP. And depository institutions could also introduce or retain products that would otherwise pose a risk of violating the expanded UDAAP interpretation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of November at Austin, Texas

_____
Glenn Hamer