IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs* <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> *Defendants.* | Case No. 6:22-cv-00381-JCB |

## DFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A STATUS CONFERENCE

Plaintiffs have filed a motion requesting a status conference "or something similar" to "discuss timing"— namely, the timing of a decision from this Court on the pending cross dispositive motions. Mot. for Stat. Conf. (Mot.), ECF No. 35, at 1. Plaintiffs insist that they "do not want to rush this Court." *Id.* at 2. But, they say, "[t]he parties finished briefing these issues months ago," *id.*, and they are trying to determine whether to file a motion for preliminary injunctive relief or to hold off rather than start "another round of briefing that might prove unnecessary." *Id.*

In short, Plaintiffs want to *receive* a status update from the Court, rather than to give a status update to the Court. Defendants welcome the opportunity to appear at any status conference the Court may deem appropriate, but do not share Plaintiffs' view regarding the need for such a conference. The Court will render its decision in due time, and Plaintiffs can make a motion for any relief they feel is necessary without the Court first holding a status conference.

What has been written above addresses the nub of Plaintiffs' request, but the prospective motion for preliminary injunctive relief discussed in Plaintiffs' filing deserves a few words. To start,

1

Plaintiffs contend that, in discussions with Plaintiffs' counsel, counsel for Defendants "floated the idea of temporarily enjoining the update . . ." Mot. at 1. Defendants will not engage in an extended discussion of "idea[s]" "floated"—or not—between counsel months ago regarding the most efficient way to litigate this case, as doing so would not advance the litigation. Suffice it to say that the parties did not reach any agreement other than what is reflected in the joint stipulation (regarding the briefing schedule, the administrative record, and discovery), *see* ECF No. 15, and Defendants have never wavered in their conviction that Plaintiffs should not prevail on a single one of their claims.

Nor does Plaintiffs' assertion that "Defendants have continued to suggest that this Court could award temporary relief in favor of Plaintiffs" advance this litigation. Mot. at 2 (cleaned up). Unsurprisingly, Defendants have not actually issued such an unalloyed endorsement of preliminary injunctive relief. Instead, Defendants have noted that the Court could potentially conserve resources by awarding temporary relief to Plaintiffs on their funding claim "*if the Court decides it has jurisdiction.*" Mot. to Dismiss and for Summ. J, ECF No. 22, at 23-24 (emphasis added). But, of course, jurisdiction is lacking. *See, e.g., id.* at 9-20.

Finally, Plaintiffs assert that urgency is now the order of the day because "the CFPB announced in its June 2023 Fair Lending Report that it is pursuing enforcement actions based on the expansive interpretation of its unfairness authority" set out in the examination manual update challenged in this case. Mot. at 2. In fact, the Fair Lending Report does not support Plaintiffs' calls for haste. To start, the 2023 report states only that the Bureau is "looking into potential discriminatory conduct, including under ECOA and the statutory prohibition on unfair acts or practices targeted at vulnerable populations and leading to bias in automated systems and models." *See* Fair Lending Report at 5, CFPB (June 2023), https://perma.cc/NFQ2-7N5H. No enforcement action has been filed by the Bureau on the ground that particular discriminatory conduct is also

unfair.[1] Moreover, that the Bureau is "looking into potential discriminatory conduct," including certain conduct that may constitute an unfair act or practice, cannot come as a surprise to Plaintiffs. The challenged updates were issued over 15 months ago, and they did not, at in any event, create the prohibition on unfairness about which Plaintiffs now complain—Congress did that almost 13 years ago in Dodd-Frank. In the end, the weakness of Plaintiffs' call for haste is demonstrated by the fact that, more than 15 months after the examination manual was updated, they train their focus not on any alleged specific harm to their members, but on some general statements (including a statutorily required reporting obligation) in an annual report.

DATED:  July 13, 2023                                   Respectfully Submitted,


SETH FROTMAN                                             *s/ Justin M. Sandberg*
General Counsel                                          JUSTIN M. SANDBERG
                                                         RYAN COOPER
STEVEN Y. BRESSLER                                       Senior Counsel
Deputy General Counsel                                   Consumer Financial Protection Bureau
                                                         1700 G St. NW
CHRISTOPHER DEAL                                         Washington, D.C. 20552
Assistant General Counsel                                Justin.Sandberg@cfpb.gov
                                                         Ryan.Cooper@cfpb.gov
                                                         (202) 450-8786 (Sandberg)
                                                         (202) 702-7541 (Cooper)

---

[1] Plaintiffs also highlight, Mot. at 2, the section of the Fair Lending Report that refers to the Federal Trade Commission's enforcement action against the Passport Automotive Group. Fair Lending Report, at 30 (noting that "the FTC alleged that defendants violated the [Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.] and Regulation B, and also violated the FTC Act, by engaging in unfair practices, by discriminating against Black and Latino consumers, [and] charging them higher financing costs and illegal junk fees."). While the Passport action is instructive, *see, e.g.*, ECF No. 22 at 5, 28, its inclusion in the Fair Lending Report is a matter of statutory obligation: "The CFPB is statutorily required to file a report to Congress annually describing the administration of its functions under ECOA," including by "summarizing public enforcement actions taken by other agencies with administrative enforcement responsibilities under ECOA." Fair Lending Report at 28; 15 U.S.C. § 1691f (noting that "each report of the Bureau shall include . . . a summary of the enforcement actions taken by each of the agencies assigned administrative enforcement responsibilities under section 1691c of this title").

3

## **CERTIFICATE OF SERVICE**

I hereby certify on this 13th Day of July, 2023, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

                                                *s/ Justin M. Sandberg*
                                               JUSTIN M. SANDBERG